UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

**JAMES MOONEY**

      **Plaintiff,**

Case No.

JURY TRIAL DEMANDED

v.

**MARTIN COUNTY**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, James Mooney, through counsel, sues Defendant Martin County for violations of his rights under the Fair Labor Standards Act (FLSA); the Family Medical Leave Act (FMLA); and Florida Workers Compensation Act, and alleges:

### JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to; 28 U.S.C. §1331; 29 U.S.C. §216(b); 29 U.S.C. §2617 and 28 U.S.C. §1367.

3. Venue is proper within this district pursuant to 28 U.S.C. §1391(b) as the events giving rise to this litigation took place in Martin County, Florida.

### PARTIES

4. Plaintiff is and was a resident of Martin County, Florida and worked for Defendant in Martin County, Florida when employed by Defendant.

1

5. The Defendant was at all times material hereto conducting its fire safety and related activities within the jurisdiction of the District Court of the Southern District of Florida, where Plaintiff was employed, and at all times material hereto was and is engaged in interstate commerce and subject to the provision of the FLSA. Defendant was and is, during all times material to this action, a "public agency" as defined in §3(s)(1)(C) of the FLSA, 29 U.S.C. §203(s) and is subject to the FLSA. Upon information and belief, the Defendant's annual gross funding as a local government agency was at all times material hereto in excess of $500,000.00 per annum, and Defendant purchased supplies and equipment (such as boats and vehicles) which have travelled in interstate commerce.

## FACTS

6. Plaintiff was continuously employed as a firefighter EMT (emergency medical technician) by the Defendant for over 17 years, from January 2003 to October 2, 2020, when the Defendant terminated Plaintiff's employment. Defendant and Plaintiff were bound by a Collective Bargaining Agreement which provided for the payment of certain wage and overtime pay.

7. At the time the Defendant terminated Plaintiff's employment, Plaintiff was 59 years of age, and the oldest active firefighter EMT employed by Defendant.

8. Plaintiff served as a dedicated first responder to the Martin County, Florida community for nearly two decades, and at all times throughout his employment with Defendant, Plaintiff performed the duties of his job as a firefighter EMT satisfactorily or better. Plaintiff had no disciplinary actions against him and Plaintiff received high positive scores on all his annual performance reviews.

9. In June of 2020, Plaintiff was one of four (4) firefighters employed by the Defendant who filed a grievance regarding unpaid wages and benefits that had been wrongfully withheld by the Defendant for over ten years.

10. Plaintiff never received any written response to the grievance but on August 7, 2020, included with his regular paycheck, Plaintiff received a direct deposit in the gross amount of $9708.32, before payroll withholding, for "retroactive pay".

11. The Defendant provided no explanation to Plaintiff regarding how the Defendant calculated the "retroactive pay" Plaintiff received, nor did the Defendant provide any explanation as to what exactly the "retroactive pay" was for. The only explanation Defendant provided to Plaintiff was that the Defendant's past actions had been deemed "unethical", and the retroactive pay only went back two years pursuant to "the statute" with no further details provided, including what specific statute Defendant was referring to.

12. Plaintiff did not believe the "retroactive pay" the Defendant paid him was the correct amount of what Plaintiff was actually owed from the Defendant. Throughout the remainder of August and September 2020, Plaintiff complained about, questioned and disputed the amount of retroactive pay that Plaintiff received from Defendant on August 7, 2020.

13. On August 14, 2020, Plaintiff took a COVID-19 test, for which he received a positive result on August 15, 2020. Plaintiff suffered multiple significant symptoms and illness from COVID-19 and was completely unable to work for approximately two weeks in August 2020. As a first responder in Florida, Plaintiff was presumed to have caught COVID-19 in the line of duty.

14. At no time did Defendant advise Plaintiff of his right to make a claim for workers compensation or take leave under the Family Medical Leave Act (FMLA), although Defendant did provide these benefits to other fire department employees who had not engaged in the protected activity that Plaintiff had engaged in, complaining about the amount and calculation of unpaid wages and back or retroactive pay received.

15. Still not over all symptoms of his illness with COVID-19, but no longer contagious, Plaintiff returned to work on August 26, 2020, and that same day he was warned by a another firefighter at the fire station while they were both on shift, to stop complaining about the retroactive pay, and that if Plaintiff did not stop complainting, the Defendant would certainly fire Plaintiff. Plaintiff was undeterred because he believed and continues to believe that the Defendant did not pay him the correct amount of back or retroactive pay to which he was and is entitled, and Plaintiff continued to openly complain about and question the matter both on all the days he was on shift and at work, as well as on his days off, to no avail.

16. Through the remainder of August and September 2020, Plaintiff continued to suffer effects from COVID-19, including extreme fatigue, brain fog and confusion, and he frequently needed to take rest breaks during his work shifts. It was obvious to both Plaintiff and Defendant that Plaintiff was not fully recovered from COVID-19. Still, at no time did Defendant inform Plaintiff of his right to take more time off under FMLA, or to make a workers compensation claim, or provide any other available assistance or benefits of any kind to Plaintiff with regard to his continued suffering from the effects of COVID-19.

17. Less than two weeks after Plaintiff's return to work after his initial COVID-19 diagnosis, and still suffering symptoms of extreme fatigue and brain fog, Plaintiff had a 24 hour

shift starting the morning of September 7, 2020 and ending the morning of September 8, 2020. Plaintiff did not feel well but it was Labor Day weekend and he did want to call in sick during a holiday.

18. On the morning of September 8, 2020, minutes before the end of his shift, Plaintiff and another firefighter were returning to their fire station from a call, when another call came in when they were almost back to the station. The other firefighter did not tell Plaintiff the address or location of the call which was the normal procedure, and Plaintiff, confused, but not realizing there was a call to respond to, pulled into the station. Immediately upon arriving at the station, the Captain on duty told Plaintiff and the firefighter with him that they had a call, and Plaintiff immediately drove himself and the other firefighter to the call and fully responded to the call.

19. On September 9, 2020, Defendant accused Plaintiff of ignoring the September 8, 2020 call that Plaintiff did in fact respond to, and placed Plaintiff on suspension pending an investigation.

20. On September 10, 2020, Plaintiff attended a meeting with Defendant, which Defendant characterized as an "employee formal investigation" of the Defendant's accusation that Plaintiff failed to respond to a call.

21. On September 14, 2020, three of Defendant's employees, including one of Defendant's Fire Captains, together contacted Plaintiff by telephone and informed Plaintiff that the Defendant was offering Plaintiff a voluntary separation package (VESIP) and Plaintiff had only until approximately 4:00 PM that same day to decide whether or not he would take it, otherwise Defendant would terminate Plaintiff's employment. Although the Defendant was

required, pursuant to the Older Worker Benefit Protection Act (OWBPA) of the Age Discrimination in Employment Act (ADEA) to provide Plaintiff with 45 (forty-five) days to consider the VESIP, Defendant gave Plaintiff less than one (1) day to decide.  Defendant's Fire Chief proceeded to explain to Plaintiff during this same telephone call that the Defendant's County Administrator, had given the Plaintiff the retroactive pay "*out of the kindness of her heart*" and that she was "*furious*" that Plaintiff had continued to complain about and question the amount of the back or retroactive pay he received from Defendant on August 7, 2020.

22. Plaintiff declined the rushed VESIP offer on September 14, 2020, and the next day, September 15, 2020, Defendant issued a recommendation that Plaintiff's employment be terminated.

23. On September 25, 2020, Plaintiff attended a "pre-deprivation hearing" with the Defendant, during which Plaintiff provided written medical confirmation to Defendant regarding Plaintiff's diagnosis of PTSD caused by his years as a first responder, and Plaintiff, still recovering from COVID-19, became very emotional while describing his PTSD in the midst of Defendant arguing his employment of over 17 years should be terminated for what was at worst an unintentional mistake.  In light of Plaintiff's emotional state on September 25, 2020, Defendant claimed it was concerned about Plaintiff's itness for duty but did absolutely nothing to inform or assist Plaintiff with regard to Plaintiff's rights to make a workers compensation claim and/or take FMLA leave, as it had for other firefighters with PTSD and/or COVID-19.

24. On October 1, 2020, Defendant issued a letter of termination to Plaintiff with an effective date of termination of October 2, 2020, the same date of separation for the employees

who took the VESIP, falsely claiming that Plaintiff had provided no mitigating information to Defendant during the September 25, 2020 hearing.

25. On November 6, 2020, Plaintiff attended a final grievance hearing and reiterated that he was still suffering the effects of COVID-19 on September 8, 2020, and needed help, and not to have his employment of over 17 years terminated by the Defendant. Defendant upheld its previous decision to terminate Plaintiff's employment.

26. Defendant denied Plaintiff his right to workers' compensation and/or FMLA leave by terminating him in retaliation for questioning and complaining about the amount of retroactive pay Defendant provided Plaintiff.

27. At least one other firefighter employed by Defendant (who did not complain about unpaid wages or backpay) has *completely failed and/or refused* to respond to more than one call, but was not terminated by Defendant.

## COUNT I

### VIOLATION OF §215 (a)(3) OF THE FAIR LABOR STANDARDS ACT

28. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 27.

29. Plaintiff engaged in protected activity under the FLSA when he complained about and disputed the amount of back or retroactive pay provided by the Defendant.

30. Defendant retaliated against Plaintiff by terminating Plaintiff's employment after Plaintiff engaged in protected activity under the FLSA.

31. As a result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages and benefits, suffered harm to his reputation, mental and emotional anguish, and other damages

including loss of career advancement opportunities.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendant:

(a) Lost wages and compensatory damages;

(b) Reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

(c) Any such further relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF §206 & §207 OF THE FAIR LABOR STANDARDS ACT

32. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 27.

33. This action is brought by Plaintiff against Defendant for unpaid wages pursuant to the FLSA.

34. Plaintiff performed compensable work for Defendant for which Defendant has refused to pay Plaintiff.

35. By failing to pay Plaintiff the pay required under the law, Defendant has violated and is continuing to violate the provision of the FLSA in a manner that is unreasonable, willful and in bad faith. As a result, at all times material herein, Plaintiff has been unlawfuly deprived of wages, compensation, and other relief for the maximum, three-year period allowed under the law.

36. As a result of Defendant's willful, unreasonable, and bad faith violations of the FLSA, there have become due and owing to Plaintiff an amount that has not yet been precisely determined. The employment and work records for Plaintiff (including time and attendance records) are in the exclusive possession, custody, and control of Defendant and Plaintiff is unable

to state at this time the exact amount owing to him.Defendant is under a duty imposed under the FLSA, 29 U.S.C. §211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiff and other employees similarly situated from which the amount of Defendant's liability can be ascertained.

37. Pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to recover liquidated damages in an amount equal to his backpay damages for Defendant's failure to pay wages and overtime compensation.

38. Plaintiff is entitled to recover attorney's fees and costs under 29 U.S.C. §216(b).

39. As a result of the Defendant's actions, Plaintiff has suffered lost wages and benefits, suffered harm to his reputation, mental and emotional anguish, and other damages including loss of career advancement opportunities.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendant:

(a)  Lost wages, compensatory damages;

(b)  Reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

(c)  Any such further relief as this Court deems just and proper.

## COUNT III
## FAMILY MEDICAL LEAVE ACT (FMLA) INTERFERENCE

40. Plaintiff re-alleges and incorporates by reference paragraphs 1- 27.

41. The Defendant violated the FMLA by terminating the Plaintiff instead of offering him FMLA leave when he had COVID-19.

42. Defendant interfered with, restrained, and/or denied Plaintiff's exercise of his rights under the FMLA by terminating him instead of allowing Plaintiff his entitlement to FMLA leave.

43. Defendant's failure to allow Plaintiff FMLA leave is a violation of the FMLA.

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

A. Statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(i) and 29 U.S.C.A. §§ 2617(a)(1)(A)(ii);

B. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

C. Equitable relief in the form of front pay, pursuant to 29 U.S.C.A. § 2617(a)(1)(B);

D. Reasonable attorney's fees and costs pursuant to 29 U.S.C.A. § 2617(a)(3), and such other relief as this Court may deem just and proper.

## COUNT IV
## §440.205, FLA. STAT. - WORKERS COMPENSATION

44. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 27.

45. As a first responder in Florida, when Plaintiff contracted COVID-19 in August 2020, it was presumed to be in the course of duty and Plaintiff was eligible to claim workers' compensation benefits.

46.     Defendant had knowledge and was aware of Plaintiff's COVID-19 illness , as well as PTSD contracted on the job, and had a duty to report a workers compensation claim for Plaintiff.

47.     Defendant terminated Plaintiff's employment, in violation of §440.205.

WHEREFORE Plaintiff demands judgment against Defendant for his back pay, future lost wages, and damages for emotional distress.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues so triable.

Dated this 31st day of May 2022.

Respectfully submitted,

/s/ Peggy Underbrink
Attorney for Plaintiff
Florida Bar No. 599107
PO Box 2463
Bellingham WA 98227
888-811-0391
peggy@peggyulaw.com